RECORD NO. 14-4336

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

—————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ANTHONY LEE KING, II,

*Defendant-Appellant.*

—————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT RALEIGH

—————————

## OPENING BRIEF OF APPELLANT

—————————

Thomas R. Wilson
GREENE & WILSON, P.A.
P. O. Box 1676
409 Pollock Street
New Bern, North Carolina 28563
(252) 634-9400
twilson@greenewilson.com

*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................iii, iv

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION.......................................................................................1

STATEMENT OF THE ISSUES................................................................2

STATEMENT OF THE CASE...................................................................3

STATEMENT OF FACTS.........................................................................4

    *Background-Charges and Posture of the case*....................................4

    *Strickland Organization*....................................................................5

    *Mr. King First Observed*...................................................................7

    *1 April 2013 – Surveillance and Controlled Buy*..............................7

    *1 April 2013 – Seize and Freeze and the Search*...............................9

    *Controlled Substance/Finger Prints/Statements*..............................11

    *King's Alleged Involvement in the Strickland Organization*.............12

    *Revoked*.............................................................................................12

SUMMARY OF ARGUMENTS................................................................13

ARGUMENTS...........................................................................................14

    **I. THE GOVERNMENT FAILED TO CARRY ITS BURDEN
    IN PROVING BY A PREPONDERANCE OF THE
    EVIDENCE THAT MR. KING HAD VIOLATED HIS
    SUPERVISED RELEASE AS ALLEGED IN THE PETITION
    FOR REVOCATION**................................................................14

**II.THE TRIAL COURT ABUSED ITS DISCRETION IN CONSIDERING THE RESULTS FROM FIELD TESTS TO SUBSTANTIATE AND FIND A "GRADE A VIOLATION" OF SUPERVISED RELEASE FOR A CONTROLLED SUBSTANCE OFFENSE**............................................................19

**III.MR. KING WAS NOT PROVIDED ADEQUATE NOTICE OF THE ALLEGATIONS EVIDENCED AGAINST HIM AT THE HEARING IN THIS MATTER**........................................24

CONCLUSION................................................................28

STATEMENT REGARDING ORAL ARGUMENT...................30

CERTIFICATE OF COMPLIANCE...............................31

CERTIFICATE OF SERVICE......................................32

## TABLE OF AUTHORITIES

<u>FEDERAL CASES</u>

*Gagnon v. Scarpelli*,
411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)...................................25

*James v. Jacobson*,
6 F.3d 233(4th Cir.1993)..................................................................14

*Morrissey v. Brewer*,
408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)............................19,25

*United States v. Beidler*,
110 F.3d 1064 (4th Cir.1997)...........................................................14

*United States v. Burgos*,
94 F.3d 849(4th Cir.1996) (*en banc*)..............................................14

*United States v. Chatelain*,
360 F.3d113 (2nd Cir. 2004)...........................................................27

*United States v. Davis*,
53 F.3d 638 (4th Cir.1995)...............................................................14

*United States v. Doswell*,
670 F.3d 526 (4th Cir.2012)........................................................19, 20,21,22

*United States v. Farrington*,
401 Fed.Appx. 784 (4th Cir. 2010)..................................................24

*United States v. Ferguson*,
752 F.3d 613 ( 4th Cir. 2014)........................................................21,22,24

*United States v. Havier*,
155 F.3d 1090 (9th Cir.1998)..........................................................27

*United States v. Kirtley*,
5 F.3d 1110 (7th Cir.1993)..............................................................27

*United States v. Neal*,
101 F.3d 993 (4th Cir.1996).........................................................................26

*United States v. Olano*,
507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)..................24, 25, 28

*United States v. Scott*,
725 F.2d 42 (4th Cir. 1984).........................................................................23

*United States v. Tham*,
884 F.2d 1262 (9th Cir.1989).....................................................................27

STATE CASES

*State v. Davis*,
___N.C.App.___, 733 S.E.2d 191 (2012)....................................................23

*State v. Fletcher*,
92 N.C. App. 50 (1988)...............................................................................21

*State v. Jones*,
___N.C. App. ___, 718 S.E.2d 415 (2011)..................................................23

*State v. Ward,*
364 N.C. 133, 694 S.E. 2d 738 (2010).......................................................23

FEDERAL STATUTES AND RULES AND CONSTITUIONAL PROVISIONS

18 U.S.C. § 3583(e)(3)................................................................................14

18 U.S.C. § 3742(a)......................................................................................1

28 U.S.C. § 1291...........................................................................................1

Fed.R.Crim.P. 32.1(b)(2)(C).............................................................19,20,26

Fed. R. App. P. 28(a)(4)(D)….......................................................................1

## UNITED STATES SENTENCING GUIDELINES

U.S.S.G. § 7B1.1(a)(1)................................................................................3,18

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Jurisdiction is based on 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). It is certified in accordance with Federal Rule of Appellate Procedure 28(a)(4)(D) that this is an appeal from a final judgment of the district court. References in this document to the Joint Appendix are denominated [JA (page number)].

The appeal of Anthony Lee King II ("Mr. King" or "defendant") is from a final judgment of the United States District Court for the Eastern District of North Carolina, Western Division, entered by the Honorable Judge Louise W. Flanagan on the 16th day of April 2014 which revoked Mr. King's supervised release. [JA(123)] Notice of Appeal was timely filed by Mr. King on 24 April 2014. [JA(124)]

## STATEMENT OF THE ISSUES

**I.    WHETHER THE GOVERNMENT FAILED TO CARRY ITS BURDEN IN PROVING BY A PREPONDERANCE OF THE EVIDENCE THAT MR. KING HAD VIOLATED HIS SUPERVISED RELEASE AS ALLEGED IN THE PETITION FOR REVOCATION?**

**II.    WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN CONSIDERING THE RESULTS FROM FIELD TESTS TO SUBSTANTIATE AND FIND A "GRADE A VIOLATION" OF SUPERVISED RELEASE FOR A CONTROLLED SUBSTANCE OFFENSE?**

**III.    WHETHER MR. KING WAS PROVIDED ADEQUATE NOTICE OF THE ALLEGATIONS EVIDENCED AGAINST HIM AT THE HEARING IN THIS MATTER?**

## STATEMENT OF THE CASE

Mr. King was originally charged on 6 August 2009 with possession in excess of five grams of crack cocaine, possession of a firearm in furtherance of drug activity, and possession of a firearm by a felon. [JA(20)] He pleaded guilty to the possession of crack cocaine charge and the possession of a firearm by a felon charge and was sentenced on 2 February 2012 to 60 months on the crack charge, and 34 months on the firearm charge—to run concurrently. [JA(24-29)]  On 7 November 2012, Mr. King was resentenced to 30 months on the crack charge, and 34 months on the firearm charge, which resulted in his being released shortly thereafter in January of 2013. [JA(30-35)]  On 2 April 2013, a petition was filed and a motion was made to revoke Mr. King's supervised release because of his arrest on state charges of conspiracy to traffic heroin and possession of heroin by the Fayetteville Police Department. [JA(36)]  This was an alleged "Grade A Supervised Release Violation" pursuant to the United States Sentencing Guidelines, U.S.S.G. § 7B1.1(a)(1).  While he made bond on the state charges, he was put into custody on the revocation petition, and was there until his hearing of 14 April 2014—approximately year later. [JA(68)] A detention hearing was held prior to the revocation hearing, on 18 December 2013, but he was denied conditions of release. [JA(64)]

3

At the conclusion of the revocation hearing on 14 April 2014, the Honorable Judge Flanagan found that Mr. King had engaged in "Criminal conduct" and sentenced him to 21 months in custody. [JA(121-22; 123)]

Mr. King timely filed his notice of appeal on 26 April 2014. [JA(124)]

## STATEMENT OF THE FACTS

*Background – Charges and Posture of the Case*

Mr. King was originally indicted on 6 August 2009 on three counts: Count One alleged possession of crack cocaine; Count Two alleged possession of a firearm in furtherance of a drug crime; and Count Three alleged being a felon in possession of a firearm. [JA(20-23)]  He pleaded guilty to Counts One and Three, and was originally sentenced on 2 February 2012, to 60 months on Count One and 34 months on Count Three. [JA(24-26)]  On 7 November 2012, Mr. King was resentenced to 30 months on Count One and 34 months on Count Three. [JA(30-35)]  He was placed on supervised release shortly thereafter in or around January of 2013. [JA(115)]

Mr. King was then under the supervision of probation office Thomas Sheppard.  [JA(36; 119)]  He was charged on 1 April 2013, with possession of heroin by Fayetteville Police in the Eastern District of North Carolina. [JA(36)]  On 2 April 2013, a petition was filed by his probation officer for

revocation of his supervised release. [JA(36)]   The Petition alleged, specifically:

> Violation 1: Criminal Conduct
>
> On April 1, 2013, the defendant was found in possession of nine ounces of heroin by Fayetteville (NC) Police Detectives.  He was charged with Trafficking in Heroin by Possession and Conspiracy to Traffic in Heroin.

[JA(36)]  Mr. King was arrested shortly thereafter, and has been in custody since that time on the supervised release violation. [JA(116)]

A hearing was held before the Honorable Judge Louise Flanagan on 16 April 2014 during which the government sought to revoke Mr. King's supervised release. [JA(37)] The government presented only one witness at that hearing—Detective Brian Tomkins from the Fayetteville Police Department. [JA(72-110)]   Detective Tomkins, a narcotics detective, testified as follows:

*Strickland Organization*

A 2013 narcotics investigation of the Fayetteville, North Carolina (Cumberland County) area yielded that Samuel Strickland ("Strickland") had been running a heroin distribution ring in Fayetteville since 2012. [JA(72)]   Strickland, the head of the organization, employed several individuals as drug couriers to facilitate drug trafficking. [JA(72)] In fact, Strickland had been charged in Cumberland County in 2012 with trafficking

5

opium, heroin, cocaine and possession of firearms prior to the conduct alleged in Detective Tomkins testimony. [JA(90)]  Detective Tomkins was not involved in that 2012 investigation that lead to those prior charges. [JA(90)]  In the early months of 2013, Strickland was not in custody from the 2012 arrests.

For the alleged conduct occurring in 2013, Detective Tomkins specifically identified individuals working for Strickland as Justin McKnight ("McKnight") and Joshua Clark ("Clark"). [JA(74)] Clark was identified as the "money man", responsible for renting cars and hotel rooms.  [JA(74)] The general method of operation was that Strickland would supply these drug couriers with cellphones, rental cars, and hotel rooms. [JA(73)] Transactions would take place in hotel rooms over a two or three day period and then the organization would change hotel rooms. [JA(72)]

Mr. King was identified as an individual possibly working for Strickland. [JA(72-73)] An informant for the government had stated Mr. King had been seen with Clark at a "house party."  [JA(91)]

In March of 2013, Detective Tomkins utilized a confidential informant to begin buying some alleged heroin from Strickland. [JA(73)] Approximately five controlled purchases were conducted over an alleged

two to three week period from the Strickland organization during the March and early April timeframe.  [JA(91)]

*Mr. King First Observed*

On 22 March 2014, based on information he had received regarding Clark, Detective Tomkins observed Clark arrive at Rick Hendrick Toyota car dealership driving a Toyota Camry. [JA(76)] Mr. King, identified only later, was first observed arriving at the dealership driving a red Kia. [JA(76)] Mr. King was observed to just be "[hanging] out" while Clark "went about his business." [JA(76)]  Clark appeared to be trading out one Camry for another.  Mr. King left the dealership driving the Kia and Clark left driving in the Camry.  [JA(77)]    Clark was followed out of the dealership by law enforcement but lost in traffic.  [JA(92)]

*1 April 2013 -  Surveillance and Controlled Buy*

On 1 April 2013, law enforcement identified a hotel where Strickland and his organization were suspected of keeping a supply a heroin—the Home2 Suites in Fayetteville, North Carolina ("hotel").  [JA(73,75)] Surveillance of the hotel was deployed and a controlled buy was arranged. This was the approximate fifth controlled buy set up by Detective Tomkins within a three week period on the Strickland organization. [JA(91)] However, this was the first time Mr. King was detected near one of

Detective Tompkins controlled buys from the Strickland organization. [JA(92)]

A cooperating defendant made a controlled phone call to McKnight and ordered a trafficking amount of heroin. [JA(74)]   McKnight was observed traveling to the hotel. [JA(74)]   He went inside, and then exited with Clark and King. [JA(74)]   McKnight and King were then observed getting in a Toyota Camry, rented in Clark's name, and traveled to a Food Lion parking lot. [JA(74)]  King rode in the passenger seat and did not exit the Camry at any point. [JA(75)]  McKnight went inside the Food Lion and allegedly met the cooperating defendant in the bathroom where the transaction occurred. [JA(75)]   McKnight then drove the Camry back to the hotel with King as the passenger, and they returned to the hotel.  [JA(75)] Law enforcement did not know which room they were allegedly occupying. McKnight and King were again observed leaving the hotel. [JA(75)]

Still on 1 April 2013, law enforcement then took control of the informant and the heroin. [JA(75)]   The heroin was field tested and the informant stated he purchased the substance from McKnight.   [JA(75)] King was not mentioned as having any part in the transaction.

Still on 1 April 2013, law enforcement then made contact with the front desk of the hotel to determine which room to target. The hotel room

associated with Strickland was determined to be room 212 and in the name of McKnight. [JA(77, 93)] There was no direct line of sight on room 212 by law enforcement. [JA(94)]

Clark and King arrived back at the hotel and King was observed going to a room on the second floor, but was not seen actually entering any room. [JA(76)]   Clark was later observed actually using his key to enter a room, which was latched. [JA(76)]  Clark and King then left driving the red Kia to an area of "known heroin dealer" but then Detective Tompkins lost his surveillance on them.    [JA(76)]  Also during this period of surveillance, there was a potential sighting of Strickland and a female at the hotel, but this was not clearly linked to room 212. [JA(92)]

*1 April 2013 – Seize and Freeze and the Search*

Still on 1 April 2013, law enforcement made the decision to "seize and freeze" the hotel room pending the issuance of a search warrant. [JA(77-78)]   The room was entered and seized, and when scanning for subjects, a blue knapsack was found under a bed. [JA(78)]

Mr. King and Clark returned to the room while law enforcement were present, but prior to presentation of the search warrant.  [JA(78)] They were immediately detained and put in police cars. [JA(78)]  Detective Tompkins then arrived with the search warrant.  [JA(98)] Detective Tompkins actually

swore out the search warrant, and made no mention of Mr. King in the warrant. After three weeks of surveillance, Mr. King's name was not known by law enforcement among the Strickland organization.[JA(98)]  Upon execution of the warrant, law enforcement located  a quarter kilogram of a substance suspected to be heroin, packaging materials, scales, ledgers, and $9,000.00 in bulk United States currency. [JA(78)]  One trashcan contained what appeared to be discarded manufacturing materials. [JA(80)]

Also located were two drug ledgers on the hotel stationary.  [JA(80)] These ledgers set forth how much to pay the couriers, how much heroin they sold and their expenditures. [JA(80-81)]  It was alleged that these were turned into Strickland after a shift by a drug courier for purposes of reimbursement.  [JA(81)]  Mr. King's name was not alleged to be in this ledger nor was his handwriting analyzed to link him to this ledger. [JA(99)] In the blue knapsack law enforcement located more items associated with drug trafficking and what appeared to be a quantity of heroin—nothing was found linking Mr. King to the blue knapsack.  [JA(81-83)]  Underneath the cushions of the love seat law enforcement located $9,000.00 in U.S. currency, packaged in $1,000.00 bundles. [JA(84)]

Mr. King and Clark were arrested.  Mr. King was found to have two cellphones on him, and Clark was also found to have two cell phones on

10

him. [JA(95)]   Mr. King explained that one of the cell phones was his, and one had been left at a restaurant, belonging to a female, and he picked it up. [JA(95)]  Detective Tomkins first testified that Mr. King was found to have $600 or $700 on his person.  [JA(85)]  This was later corrected when he was confronted with the Fayettiville Police Department report which documented that $217.00 was found on Mr. King's person.  [JA(97)]

*Controlled Substance/Finger Prints/Statements*

As of the date of the revocation hearing, none of the substances seized by law enforcement from the hotel on 1 April 2013 had been conclusively identified as a controlled substance.  [JA(98-99)]

Two of the bags of the alleged narcotics seized from the hotel were tested for latent finger prints. [JA(99-100)]   Neither examination yielded results linking Mr. King to the narcotics and were otherwise inconclusive. [JA(100)]

Post-*Miranda* statements were taken from Strickland and McKnight. [JA(102)].  Neither statement alleged conduct in the Strickland organization by Mr. King.  [JA(102)] Strickland's statement on 1 May 2013 claimed ownership of both the heroin in the hotel room, and "all the gray dope in Fayetteville." [JA(102)]   McKnight's statement on 30 April 2013 asserted all the money and alleged heroin located in the hotel room was Strickland's.

11

[JA(102)]  McKnight went on to detail in his statement how the Strickland organization operated and made no mention of Mr. King.  [JA(103)]

*King's Alleged Involvement in the Strickland Organization*

Detective Tomkins concluded his direct testimony that Mr. King and Strickland were childhood friends.  [JA(88)]  He asserted that it appeared, through his investigation, that he "suspected" Mr. King was "being brought into the fold as a drug courier."  [JA(88)]  Detective Tompkins testified that Mr. King appeared not to have a job because he was under surveillance during the standard work day but did not appear to be working legitimately. [JA(89)]  Detective Tomkins theories as to Mr. King stem from observing Mr. King only twice over the course of the 2013 investigation—on March 22 at the car dealership and 1 April during the course of the day when he was with Clark and McKnight.

*Revoked*

The trial court revoked Mr. King's supervised release, and sentenced him to 21 months—having served approximately 12 of those months by the date Judgment was entered on 16 April 2014.  [JA(121;123)]

## SUMMARY OF THE ARGUMENTS

Mr. King was violated and revoked from his supervised release in error. The government provided notice of his violation, criminal conduct of alleged possession of nine ounces of heroin—a Grade A violation; yet, ultimately the government put on evidence of a nebulous role in the Strickland organization. There was no direct evidence, not even a confirmed testing of the alleged controlled substance, to find Mr. King guilty of the alleged violation. Even the circumstantial evidence of Mr. King's role in the Strickland organization was suspect at every turn. His revocation should be vacated, and he should be released immediately back on to supervised release.

## ARGUMENTS

I.   **THE GOVERNMENT FAILED TO CARRY ITS BURDEN IN PROVING BY A PREPONDERANCE OF THE EVIDENCE THAT MR. KING HAD VIOLATED HIS SUPERVISED RELEASE AS ALLEGED IN THE PETITION FOR REVOCATION.**

### A. Standard of Review.

This Honorable Court reviews a district court's revocation of supervised release and its imposition of a sentence after revocation for abuse of discretion. *United States v. Davis*, 53 F.3d 638, 642-43 (4th Cir.1995). An abuse of discretion occurs when the court fails or refuses to exercise its discretion or when its exercise of discretion is flawed by an erroneous legal or factual premise. *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir.1993). The district court need only find a violation of a condition of supervised release by a preponderance of the evidence. See 18 U.S.C. § 3583(e)(3).   A defendant challenging the sufficiency of the evidence faces a heavy burden. *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir.1997). In determining whether the evidence in the record is substantial, this court views the evidence in the light most favorable to the Government. *United States v. Burgos*, 94 F.3d 849, 862–63 (4th Cir.1996) (*en banc*).

## B. Legal Discussion.

Two Standard Conditions of Mr. King's supervised release, under his Amended Judgment entered on 7 November 2012, were as follows:

> 8) the defendant shall not frequent places were controlled substances are illegally sold, used, distributed, or administered;
>
> 9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer[.]

[JA(32)]  These two conditions are the actual case the government sought to make at Mr. King's revocation hearing, and these conditions track far more sufficiently the government's evidence.  However, instead, the burden the government assigned itself to prove by a preponderance of the evidence by way of its petition was to revoke Mr. King's supervised release for "criminal conduct"—specifically possessing nine ounces of heroin.  [JA(36)]

The government, as to the burden it assigned itself, failed to prove its case by a preponderance of the evidence.  To begin with, Mr. King was identified as being present among the Strickland organization during the three week investigation in 2013 on just two occasions: the first on March 22 when he is observed "hanging out" as Mr. Clark changed out rental cars; the second on 1 April 2013 where he is observed going to and from the hotel, and accompanies McKnight on an alleged controlled purchase during which

he never left the vehicle and took no part any alleged exchange. [JA(73-80)] Detective Tomkins himself describes his unproven or "suspected" theory of Mr. King being present on these two occasions as him "being brought into the fold as a drug courier." [JA(88)] There are four other controlled purchases that occurred during this time period, none of which involve Mr. King. [JA(105)] An unidentified informant only otherwise links Mr. King with the Strickland organization having observed Mr. King with Clark at a "house party." [JA(91)]

Mr. King was childhood friends with Strickland, Clark and McKnight. [JA(88)] He was just out of federal prison and attempting to engage in day trading. [JA(90,100)] Observations by Detective Tomkins, pursuant to his surveillance, describe Mr. King among the Strickland organization as "hanging out" and riding around with the Strickland organization. Mr. King was not linked by any informant as being a courier or playing any role in the Strickland organization—such as coordinating deals or handling drugs or money—nor was he otherwise observed doing such things over the three week investigation (again, he in fact was only observed two times during this three weeks—22 March and 1 April). Moreover, Mr. King is not linked by any direct evidence of phone records, cell phone information, the alleged drug courier ledgers located in the hotel room,

vehicle records from the dealerships, hotel records, finger prints, audio or video surveillance as having taken part in any of these deals other than waiting in a Food Lion parking lot. His notebook located and investigated from one of the vehicles was deemed to contain "noncriminal" contents. [JA(100-01)]

The government seemed to place a large weight on the money found on Mr. King's person, which was first represented to the court as being approximately $600.00 or $700.00.  [JA(89)]  The government later back tracked on this point as being an "oversight" or otherwise confused when confronted with Fayetteville Police Records evidencing Mr. King was found with only $217.00 on his person.  [JA(89,97-98,106,109)]

At the heart of this allegation is an alleged conspiracy to distribute heroin.  However, there is no competent or direct evidence that in fact the alleged transactions in this matter, and what was found in the hotel on 1 April 2013, was heroin.  [JA(98)] Whether there is a "backlog" at the North Carolina State Bureau of Investigations ("SBI") lab does not somehow make the government's burden less than it otherwise is under the law—to prove this violation by a preponderance of the evidence. [JA(98)]    The government, in its petition, established the violation it sought to evidence and prove to revoke Mr. King's supervised release—a Grade A violation

under the guidelines for a controlled substance offense.  See U.S.S.G. §
7B1.1(1)(a)(1).

Finally, and maybe most significantly, two individuals with the most
to benefit from giving forthcoming information as to Mr. King's
involvement in the Strickland organization—Strickland and Clark—made no
mention of Mr. King in their statements to law enforcement. [JA(101-04)]
McKnight in fact provides a detailed account of the Strickland organization
that closely tracks what Detective Tomkins described as the *modus operandi*
of the Strickland organization, and makes no mention of Mr. King's
involvement.  [JA(104)]    McKnight was, however, forthcoming about
himself, Strickland and Clark.  [JA(104)]

As a result of the evidence put on by the government, the court found
simply: "Criminal conduct."  [JA(123)] No further findings were made in its
written judgment as to what the conduct was, whether it a Grade A violation,
and absent is mention of the conduct alleged in the petition. [JA(124)]

II.    **THE TRIAL COURT ABUSED ITS DISCRETION IN CONSIDERING THE RESULTS FROM FIELD TESTS TO SUBSTANTIATE AND FIND A "GRADE A VIOLATION" OF SUPERVISED RELEASE FOR A CONTROLLED SUBSTANCE OFFENSE.**

### A. Standard of Review.

This Honorable Court reviews a district court's evidentiary ruling in a revocation hearing for abuse of discretion. *United States v. Doswell*, 670 F.3d 526, 529 (4th Cir. 2012).  Revocation hearings are less formal than trials of guilt, where "the full panoply of rights due a defendant" are in effect. *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Nonetheless, from the defendant's perspective, trials and revocation hearings are similar in that the end result may be a loss of liberty. Accordingly, some due process rights apply. *Id.* at 487–88, 92 S.Ct. 2593. In *Morrissey*, the Supreme Court explicitly identified "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)" as one of several "minimum requirements of due process" that apply to revocation hearings. *Id.* at 488–89, 92 S.Ct. 2593. These requirements are formalized in the Federal Rules of Criminal Procedure. Under Rule 32.1, defendants are entitled to "an opportunity to appear, present evidence, and question any

adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed.R.Crim.P. 32.1(b)(2)(C).

### B. Legal Discussion.

Mr. King was charged in state court with being in a conspiracy to distribute heroin. [JA(36)]  He was arrested on that charge on 1 April 2013, and the probation officer issued a Revocation of Supervised Release Notice the following day. [JA(36)]   As of the date of his revocation hearing stemming from the same allegations, the state charges had not been resolved or even indicted to superior court. [JA(99)]  One of the reasons was that the lab results from the SBI lab had not been received by the state authorities. [JA(99)]

The Federal Rules of Criminal Procedure, Rule 32.1(b)(2)(C) require that in a Revocation of Supervised Release hearing, that hearsay evidence is inadmissible unless the court determines that the interest of justice does not require the witness to appear. In the recent case of *United States v. Doswell*, 670 F.3d 526 (4th Cir. 2012), this Court held that the admission of a drug analysis report without the proper lab agent being there to authenticate it was inadequate.

In the case at bar, the substance at issue was *never* even subject to laboratory analysis. [JA(98-99)]    All that was present was the state charge

of involvement in an alleged heroin conspiracy, and a field test for heroin, without any official authentication that the substance involved was in fact heroin. The present case is weaker than the *Doswell* case and that of its most recent progeny, *United States v. Ferguson*, 752 F.3d 613, 616-18 (2014). In *Doswell* and *Ferguson*, there in fact were lab results which were deemed hearsay but otherwise supported by other evidence that the defendant possess a controlled substance. Yet still, this Court reversed in both matters. In *Ferguson*, the evidence pertained to marijuana, which in North Carolina can be proven without lab examination as direct evidence. See *State v. Fletcher*, 92 N.C. App. 50, 57-58 (1988)(…"the absence of such direct evidence [a chemical analyst] does not…prove fatal…the absence of such evidence does not render the opinion testimony insufficient to show the substance was marijuana."). Yet, still this Court reversed when there was no conclusive scientific evidence to identify the alleged controlled substance at issue.

While there was not an actual objection to the Detective Tomkins' testimony as to the alleged substances being identified as heroin, this is because his testimony pertained only to field tests he conducted. However, these fields tests should be deemed *per se* in adequate to substantiate a Grade A supervised release violation for a controlled substance offense that

results in a loss in liberty such as what is at issue in the case at bar—and the reversals in *Doswell* and *Ferguson* support this point.

Trial counsel in this matter preserved the issue and pointed out to the court that there was no lab report on the substance involved. Indeed, there was only a charge in state court, and no resolution of that charge before the revocation proceedings were instigated (despite 12-months time having elapsed). Nor was there an attempt by the government to justify the failure to have a lab report there—other than stating there was a "backlog" at the SBI lab and the substance had not yet been tested—and by-passing the issue by simply a reliance on a field test for heroin. The district court found, based on the testimony received, that there was a large scale heroin distribution activity going on, and did that without sufficient evidence on which to reach such a conclusion.

If lab reports from a qualified lab are not sufficient to satisfy the standard for revocation of supervised release, certainly a field test that was testified to by a detective involved in the case is insufficient to satisfy the required standard of proof required to revoke supervisory release. There is no opportunity to cross examine because there is not even a report to review, just the officer testifying that they did a field test that is not measured or controlled by standardized and accepted scientific methods.

Here, the trial court relied heavily on the evidence of nine ounces of alleged heroin to conclude that there was a large heroin ring operating, and that Mr. King had become involved with it—despite the lack of any admissible evidence that the substance involved was even heroin, or convictions of any of the participants. In fact, the other alleged participants in this activity had not been tried in state court or in federal court. In North Carolina, the state is required to prove the presence of heroin or cocaine by scientifically valid chemical analysis. See *State v. Ward*, 364 N.C. 133, 147, 694 S.E.2d 738, 747 (2010) (that "[u]nless the State establishes before the trial court that another method of identification is sufficient to establish the identity of the controlled substance beyond a reasonable doubt, some form of scientifically valid chemical analysis is required"); See also *State v. Davis*, 733 S.E.2d 191 (2012); *State v. Jones*, 718 S.E.2d 415 (2011*); but see United States v. Scott*, 725 F.2d 42 (4th Cir. 1984).

Reason dictates that is was an abuse of discretion by the trial court to find sufficient evidence to violate and revoke Mr. King on a Grade A violation in this case where laboratory evidence underlying the basis for the violation does *not* exist; where this court has reversed and remanded in *Doswell* and *Ferugson* where laboratory evidence underlying the basis of the violation existed, but was simply improperly admitted. As was detailed in

*Ferguson*, the improperly admitted evidence against Mr. King had a "significant effect on *[King's]* sentence" where it was the one and only basis for his revocation. *Ferguson*, 752 F.3d 613, 620 (the Court in Ferguson reversed despite the defendant actually admitting to some of the violations against him).

Therefore, the trial court abused its discretion in relying on the field testing in this matter to conclude Mr. King played some role in possessing and trafficking in heroin when the essential element of such a crime--that the alleged substance was indeed heroin--was not proven.[1]

## III.   MR. KING WAS NOT PROVIDED ADEQUATE NOTICE OF THE ALLEGATIONS EVIDENCED AGAINST HIM AT THE HEARING IN THIS MATTER.

### A. Standard of Review.

Mr. King asserts herein that he was not provided sufficient notice for the alleged "criminal conduct" by which the trial court ultimately revoked his probation.  Where this due process issue was not timely raised prior to or during the proceedings below, it is herein subject to this Honorable Court's plain error review.    See *United States v. Olano*, 507 U.S. 725, 733, 113

---

[1] This Court in *Ferguson*, in Footnote 1, did not reach the issue of whether the trial court abused its discretion in considering field testing as a sufficient basis for finding he possessed drugs.  See *Ferguson*, at 616, ftn 1.  But see *United States v. Farrington*, 401 Fed.Appx. 784 (4th Cir. 2010) (where the Court upon a very limited record found field testing sufficient for the government to carry its burden.)

S.Ct. 1770, 123 L.Ed.2d 508 (1993). Four conditions must be met before this Court will notice plain error: (1) there must be error; (2) it must be plain under current law; (3) it must affect substantial rights, typically meaning the defendant is prejudiced by the error in that it affected the outcome of the proceedings; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 732-37, 113 S.Ct. 1770. This issue was essentially addressed in the closing arguments of the parties where essentially, after the evidence was in, it was clear the government was not and could not prove the alleged ground for revocation of supervised release—possession of heroin—but instead cited a far more nebulous theory for revocation.

### B. Legal Discussion.

Mr. King herein asserts his supervised release was revoked in this matter, not based on what was alleged in his petition for supervised release [JA(36)] , but the government's nebulous evidence of his relationship with the Strickland operation, its members, and/or just "hanging" around them. The plain language of the petition asserted against Mr. King his possession of nine ounce of heroin; this, the only alleged violation, was not proven.

While revocation hearings are not part of a criminal prosecution, a defendant is nonetheless entitled to the "minimum requirements of due

process," including "written notice of the claimed violations." *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); see also Fed.R.Crim.P. 32. 1(b)(2)(A); *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). In the present case, the notice provided by the revocation petition was insufficient, denying adequate notice to Mr. King to defend the charges of possession of heroin.

The plain error standard is satisfied when the "settled law of the Supreme Court or this circuit" establishes that an error has occurred. *United States v. Neal*, 101 F.3d 993, 998 (4th Cir.1996) (internal quotation marks and citation omitted). In the absence of such binding authority, decisions by other circuits courts may be considered. *Id*. In this case, there are no decisions by the Supreme Court or this Court in regard to this particular issue, but the Second Circuit provides a well developed template for adequate notice of a violation of this nature.  Specifically, that Second Circuit states:

> .The notice must be sufficient to allow the releasee to prepare to defend against the charges. We would regard a petition asserting a violation of the supervised release requirement that the releasee not commit any new crime as providing adequate notice in accordance with Fed.R.Crim.P. 32.1(b)(2)(A) and the Constitution if it identifies the no-further-crime condition as the condition allegedly violated, identifies the crime allegedly committed, and contains a description of the basic facts underlying the new criminal charge, including the approximate dates of the events, the location at which they occurred, and the

individuals involved. Accord *United States v. Havier*, 155 F.3d
1090, 1093 (9th Cir.1998); *United States v. Kirtley*, 5 F.3d
1110, 1113 (7th Cir.1993); *United States v. Tham*, 884 F.2d
1262, 1265 (9th Cir.1989).

*United States v. Chatelain*, 360 F.3d113, 121 (2nd Cir. 2004).  Should this
Court adopt such a clear standard for notice, the petition at issue in this case
is insufficient and denies due process. The petition provides a date, but
otherwise lacks meaningful specificity other than the quantity of alleged
substance found, and the resulting state charges.  [JA(36)]

The government effectively proved a lesser grade of violation by Mr.
King for his hanging around the wrong people, some of whom may have
been drug dealers. Therefore, this due process violation in the petition
"affected the outcome of the district court proceedings." *Id.*  Mr. King's
defense was prepared for and geared towards defending him against the
primary allegation, that he possessed over nine ounces of heroin.  The
government was never able to prove this possession or that there was any
heroin, but instead merely focused on him hanging around his alleged drug
dealer friends for two days; had this been the allegation in the petition, Mr.
King could have geared his defense to better explain why he was hanging
around his childhood friends during this time period, providing evidence
other than being a member of the Strickland operation.   Upon the same

gravity of this point, this error relating to the revocation petition "seriously affect the fairness, integrity or public reputation of judicial proceedings" where the petition misdirected Mr. King's defense from what was actually sought and determined by the trial court to be the basis of the violation. *Olano*, 507 U.S. at 736-37, 113 S.Ct. 1770. Accordingly, this resulted in plain error warranting vacating the judgment and returning Mr. King to supervised release.

## **CONCLUSION**

Based on the foregoing facts, legal principles and arguments, Mr. King seeks relief from this Court. The trial court abused its discretion in relying on the government's evidence as to the alleged controlled substance at issue in this matter, and the government otherwise failed to meet its burden in proving beyond a preponderance of the evidence the ground for revocation alleged in the petition and for which Mr. King was on notice. For these reasons, judgment in this matter should be vacated and Mr. King returned to supervised release

Respectfully submitted, this the 8 day of September, 2014.

**GREENE & WILSON, P.A**.


/s/ Thomas R.Wilson
Thomas Reston Wilson
Counsel for Anthony King, II
P.O. Box 1676
New Bern, NC 28563
(p):   252-634-9400
(f):   252-634-3464
(e):   twilson@greenewilson.com

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant Anthony desires to state orally, before a panel of Judges of the Fourth Circuit United States Court of Appeals, why his appeal should be heard and the merits of the above set forth issues.

Specifically, this appeal merits oral argument because Mr. King raises a question for the Fourth Circuit to consider whether field testing controlled substances as evidence of verification of a controlled substance—such as heroin—is sufficient to prove a Grade A violation for supervised release. This issue is ripe for review in light of the Court's holding in *Doswell* and *Ferguson, supra*.

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

      1.    This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because this brief uses a proportional typeface and contains 5,822 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

      2.    This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of  Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportional typeface using Microsoft Word 2000 ,New Roman Times style 14 point font.

/s/Thomas Reston Wilson
Attorney for Appellant

Dated: 8 September 2014

## **CERTIFICATE OF SERVICE**

I certify that I have filed the Appellant's Brief and Joint Appendix with the Clerk, United States Court of Appeals for the Fourth Circuit via hand delivery and electronically using the Court's CM/ECF system which will send notification of such filing to:

Jennifer May-Parker, Esq.
Office of the U.S. Attorney
Federal Building, Suite 800
310 New Bern Avenue
Raleigh, NC 27601

/s/ Thomas Reston Wilson
Attorney for Appellant

Dated: 8 September 2014